

FILED

OCT - 8

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WHITFIELD PINDER, JR.,

        Plaintiff,

v.                                               Civil Action No.: 2:09cv274

OFFICER JASON C. KNOROWSKI, CITY
OF PORTSMOUTH POLICE
DEPARTMENT, in his individual capacity
and in his official capacity,

AND

OFFICER JEFF WHITSON, CITY OF
PORTSMOUTH POLICE DEPARTMENT,
in his individual capacity and in his official
capacity,

        Defendants.

## ORDER

This matter comes before the Court on Motions to Dismiss filed by Defendants Knorowski and Whitson, respectively. Docs. 15 (Knorowski's Motion to Dismiss) and 27 (Whitson's Motion to Dismiss). For the reasons that follow, Defendants' Motions to Dismiss are **DENIED**.

### I. PROCEDURAL HISTORY

On June 10, 2009, Plaintiff Whitfield Pinder filed a Complaint against Defendants Knorowski, Whitson, and six other police officers seeking relief under 42 U.S.C. §§ 1983 and 1985 for illegal search, false arrest, false imprisonment, fabrication of evidence, malicious

1

prosecution, conspiracy, and racial discrimination. Doc. 1. On July 28, 2009, these eight defendants filed a total of twelve motions (counting one combined motion as two separate motions) asking the Court to dismiss the Complaint, and to strike Exhibit A to the Complaint and all references thereto in the Complaint. Docs. 13-15, 17, 19, 21, 23, 25, and 27-29. The six defendants not named here were dismissed pursuant to an Agreed Order entered on August 28, 2009, Doc. 61, thereby rendering their respective motions moot. The Agreed Order also dismissed Counts V, VII, VIII, and IX of the Complaint as to all defendants, and further dismissed Counts III and IV as to Defendant Whitson. Id.

Only the motions submitted by Officer Knorowski, Docs. 15 & 17, and Officer Whitson, Doc. 27, are presently before the Court. Plaintiff responded to these motions on August 8, 2009, Docs. 48-50, and Defendants replied on August 17, 2009, Docs. 56-58. This Order addresses only the Motions to Dismiss, Docs. 15 & 27; the Motions to Strike, Docs. 17 & 27, will be addressed in a separate order. As the motions and briefs were drafted before the Agreed Order was entered, they contain arguments relating to the dismissed counts; however, this order considers only those arguments relating to the currently outstanding counts, which are: Counts I (Illegal Search), II (False Arrest), III (Illegal Search Under Invalid Search Warrant), IV (Causing False Imprisonment), and VI (Malicious Prosecution) against Officer Knorowski; and Counts I, II, and VI against Officer Whitson.

## II. FACTUAL BACKGROUND[1]

As alleged in the Complaint, Defendant Knorowski received a tip from a confidential

---

[1] For the purposes of the Motions to Dismiss only, the Court accepts the facts properly pleaded by Plaintiff in the Complaint to be true.

2

informant on March 3, 2006, alleging that Plaintiff Whitfield Pinder, Jr. was manufacturing illegal DVDs at his resident in Portsmouth, VA. Doc. 1 ¶¶ 7–9. Despite instructions to the contrary from one Sergeant Walker of the Portsmouth Police Department's Criminal Investigations Unit, Defendants Knorowski and Whitson went to Plaintiff's residence and demanded consent to search for the alleged DVDs. Id. ¶¶ 11–13. When Plaintiff refused, the officers announced they were freezing the residence and would conduct a protective search. Id. ¶ 14. The officers did not have a search warrant. Id. They handcuffed Pinder and, assisted by two additional officers who had just arrived, proceeded directly to the attic and conducted a search that yielded items believed by the officers to be contraband. Id. ¶¶ 15–16. A number of additional officers then arrived. Id. ¶ 17. Two of these officers, Lieutenant Smith and Sergeant McClure, indicated that they believed the search was illegal and invalidly conducted, but two other officers, Captain Butler and Lieutenant Colonel Fremd, ordered Smith and McClure to leave the scene. Id. ¶ 19. Butler and Fremd directed Knorowski to apply for a search warrant, which was subsequently granted based on an affidavit signed by Knorowski. Id. ¶ 20. Pinder's residence was then searched by all eight of the original defendants, including Knorowski, Whitson, Fremd, and Butler, and various items believed to be contraband were removed. Id. ¶ 21.

The same day, March 3, 2006, Pinder was arrested and incarcerated in pretrial confinement pending state criminal charges. Id. ¶¶ 22–23. On February 7, 2007, he was indicted in federal court, and on February 12, 2007, the state charges against him were dropped. Id. ¶ 23. On June 1, 2007, after a two-day hearing in federal court on a Motion to Suppress filed by Pinder, the court granted the motion, noting several times that Knorowski's testimony at the

hearing lacked credibility. Id. ¶¶ 24–26. The prosecution subsequently moved to dismiss the indictment, and an Order of Dismissal was entered on June 14, 2007. Id. ¶ 28. Other than a brief period during which he was released on bond, Pinder remained incarcerated on pretrial confinement from March 3, 2006 to June 14, 2007. Id. ¶ 22. As noted above, Pinder filed the Complaint in the present case on June 10, 2009. Id.

### III. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts of the case, the merits of a claim, or the applicability of any defense. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff.") (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)). Although the Court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.

In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §

4

1357 (1990)). The Court may also look to documents attached to the Complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

### IV. STATUTE OF LIMITATIONS (BOTH DEFENDANTS)

Defendants Whitson and Knorowski argue that Pinder's claims are barred by the statute of limitations. Defendant Whitson initially excludes Count VI from this argument, but then argues that it applies to Count VI in his rebuttal brief. All of the parties agree (1) that the applicable statute of limitations is Virginia's two-year statute of limitations on actions for personal injury, (2) that federal law governs the accrual date of Pinder's Section 1983 and 1985 causes of action, and (3) that the state's tolling provisions should be considered when applying a state statute of limitations to a federal constitutional claim. Plaintiff and Defendants seem to agree on the accrual date of Plaintiff's claims; therefore, with the exception of Count VI, the Court assumes that Plaintiff's claims accrued on March 3, 2006. See, e.g., Doc. 48 at 1; Doc. 16 at 4. As for Count VI, because the claim therein requires Plaintiff to allege the favorable termination of proceedings against him, that claim did not accrue until June 14, 2007, the date on which the indictment against Plaintiff was dropped. See Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996). Thus, Count VI is not barred by the statute of limitations.

The parties' briefs focus largely on whether the statute of limitations on Plaintiff's claims was tolled during his state and then federal prosecutions by a provision of Virginia law. See Va. Code Ann. § 8.01-229(K) (2009). That provision states:

5

> In any personal action for damages, if a criminal prosecution arising out of the same facts is commenced, the time such prosecution is pending shall not be computed as part of the period within which such a civil action may be brought. For purposes of this subsection, the time during which a prosecution is pending shall be calculated from the date of the issuance of a warrant, summons or capias, the return or filing of an indictment or information, or the defendant's first appearance in any court as an accused in such a prosecution, whichever date occurs first, until the date of the final judgment or order in the trial court, the date of the final disposition of any direct appeal in state court, or the date on which the time for noting an appeal has expired, whichever date occurs last. Thereafter, the civil action may be brought within the remaining period of the statute or within one year, whichever is longer.
>
> If a criminal prosecution is commenced and a grand jury indictment is returned or a grand jury indictment is waived after the period within which a civil action arising out of the same set of facts may be brought, a civil action may be brought within one year of the date of the final judgment or order in the trial court, the date of the final disposition of any direct appeal in state court, or the date on which the time for noting an appeal has expired, whichever date occurs last, but no more than ten years after the date of the crime or two years after the cause of action shall have accrued under § 8.01-249, whichever date occurs last.

Id. Defendants contend that this provision did not toll the statute of limitations on Pinder's claims for three reasons: (1) the criminal action did not arise out of the "same facts" as Pinder's personal action; (2) the tolling provision does not apply to a second, or alternately a federal, prosecution; and (3) the statute is ambiguous and therefore must be construed against tolling the statute of limitations. Because this provision became law in 2001 and has been rarely invoked since, there is very little authority to inform the resolution of these arguments.

### A. Arising Out of the Same Facts

Defendants first point out that tolling provisions are to be strictly construed. "In light of the policy that surrounds statutes of limitations, the bar of such statutes should not be lifted unless the legislature makes unmistakably clear that such is to occur in a given case. Where there

exists any doubt, it should be resolved in favor of the operation of the statute of limitations." Burns v. Bd. of Supervisors, 315 S.E.2d 856, 859 (Va. 1984). Defendants then argue—at great length—that while Pinder's criminal prosecution was based on facts relating to possession of illegal items such as weapons, drugs, and DVDs, this subsequent action is based on facts relating to the actions of various police officers. Thus, according to Defendants, the two actions are not based on the same facts and the tolling provision does not apply. Defendants also suggest that had the General Assembly wished the tolling provision to apply more broadly, it would have used any one of numerous phrases with a more expansive meaning (i.e. "same transaction or occurrence"), as it did in various other statutes. See Doc. 16 at 7–10; Doc. 32 at 10–12.

In response, Plaintiff argues that his prosecution and his current lawsuit both stem from the search of his residence. Specifically, Plaintiff explains that his prosecution "was based on evidence gained during the search of his residence," and that "his current lawsuit is based on [(1)] the events leading to the search of his residence, [(2)] the search of his residence, and [(3)] the subsequent wrongs arising out of that search." Doc. 50 at 3. Neither side cites supporting authority for its respective interpretation of the "same facts" clause.

Defendants offer an overly narrow interpretation of the tolling provision. In one sense, Defendants are correct—Plaintiff's allegations here are not identical to those the prosecution would have had to prove to be successful in their earlier action against Plaintiff. At the same time, Plaintiff is also correct, in that the facts that occurred on March 3, 2006 gave rise both to his criminal prosecution and to his present lawsuit. Indeed, the tolling provision does not require that the personal and criminal proceedings be based on the same facts or that they allege the same facts; rather, it requires that both proceedings "aris[e] out of the same facts." In this instance,

then, the language of the provision supports Plaintiff's argument.

## B. Subsequent and Federal Prosecutions

Defendants Whitson and Knorowski both argue that the tolling provision only applies to the first criminal prosecution to arise out of the same facts, and further argue that it only applies to the first state criminal prosecution to arise out of the same facts. Plaintiff responds only by distinguishing the sole case cited by Defendant Knorowski to support the latter argument and by stating, without citation, that a proposed legislative amendment limiting Section 229(K)'s application to an initial criminal prosecution in state court was rejected.

To support the first of these two arguments, Defendants point to the use of the singular form in the tolling provision: "a criminal prosecution," "a prosecution," and "such prosecution." Defendants conclude from this language that tolling is only permissible during the first prosecution, see Doc. 32 at 13, and they reinforce that argument by citing various rules of statutory interpretation. See Klarfield v. Salsbury, 355 S.E.2d 319, 323 (Va. 1987) ("[W]hen the General Assembly uses two different terms in the same act [(here, 'a' and 'any')], it is presumed to mean two different things."); Amherst County Bd. of Supervisors v. Brockman, 297 S.E.2d 805, 808 (Va. 1982) (explaining that adding language to a statute that the legislature has chosen not to include is impermissible under Virginia law).

Although they urge the Court not to add language to Section 229(K) by applying it to consecutive state and federal prosecutions, it is Defendants who ask the Court to read an unstated requirement into the statute. Only one explicit criterion is listed in Section 229(K) by which to determine whether the tolling provision applies: the criminal prosecution must arise out of the

8

same facts as the later-filed personal action. The statute says nothing about being applicable only to the first criminal prosecution against a defendant, and to limit its application to first prosecutions only would arguably violate the very principle of interpretation cited by Defendants. Furthermore, that the provision refers to criminal proceedings only in the singular does not definitively mean that it can apply only to one criminal proceeding; to the contrary, the singular form conveniently provides for both the possibility of only one prosecution and the possibility of multiple prosecutions—in which case each individual prosecution can be measured against the standard set forth in Section 229(K) to determine whether the statute of limitations should be tolled.

Defendants also propose interpreting the word "court" in the tolling provision as referring only to state court. To support this limitation they argue that subsequent sentences in Section 229(K) explicitly refer to events in "state court," and that other subsections of Section 229 explicitly refer to federal courts. For example, one subsection's tolling provision, which is triggered by a voluntary nonsuit, goes so far as to state that it applies "irrespective of whether the action is originally filed in a federal or state court and recommenced in any other court." Va. Code Ann. § 8.01-229(E)(3). Additionally, Defendants argue that elsewhere in the Virginia Code—Knorowski cites a provision in Virginia's Uniform Arbitration Act—"court" is defined as a court of the Commonwealth of Virginia. See Doc. 16 at 10–12.

Though Defendants take the opposite view, the existence of explicit references both to state courts and to federal courts in various subsections of Section 229 arguably shows that if the General Assembly had wished Section 229(K) to permit tolling for criminal prosecutions brought in state court only, it would have so stated. Also, the Uniform Arbitration Act, where "court" is

9

defined as referring to state courts only, is an entirely distinct section of the Virginia Code. Even if it were not, one might expect the Virginia Code to be written to apply to Virginia courts, since state tolling provisions apply to federal causes of action only because federal law borrows them from the states. See, e.g., West v. Conrail, 481 U.S. 35, 40 n.6 (1987).

Furthermore, the opening sentence of Section 229(K), which states the tolling rule itself, does not use the word "court." That word is found only in subsequent sentences explaining when to toll the limitations period if the tolling rule applies. Thus, the date of "the defendant's first appearance in any court" is one possible date on which tolling may begin, and "the date of the final disposition of any direct appeal in state court" is one possible date on which tolling might end. Va. Code Ann. § 8.01-229(K) (emphasis added). Neither of these statements necessarily limits the provision's applicability to state court prosecutions only. Finally, Section 229(K) was added independently in 2001; therefore, the legislature that drafted it was not the same legislature that drafted the other subsections. This weakens the argument that Section 229(K)'s lack of an explicit reference to federal courts, like that in Section 229(E)(3), represents an affirmative decision by the General Assembly that the section should apply only to state court prosecutions. Though Section 229(K) appears to contemplate that its principal application will be for state prosecutions, nothing within the provision reflects an intention that it not apply to federal prosecutions as well.

### C. Ambiguity of § 8.01-229(K)

Defendants' final argument that the tolling provision does not save Pinder's claims is that the provision is ambiguous, and therefore cannot be applied. See Burns, 315 S.E.2d at 859

10

(explaining that statutes of limitations should not be tolled unless the legislature makes its intent to do so unmistakably clear). Ambiguous language is defined as language that can be understood in more than one way, that refers to two or more things simultaneously, that lacks clarity and definiteness, or that is difficult to understand or of doubtful import. See Travelers Prop. Cas. Co. of Am. v. Ely, 666 S.E.2d 523, 526 (Va. 2008).

As evidenced by their briefs, Defendants have exerted substantial effort to convince the court that Section 229(K) is ambiguous. The provision does not explicitly say that it does apply to multiple prosecutions and to both state and federal prosecutions, but neither does it state that the legislature did not intend for Section 229(K) to be applied to facts such as these. The provision does not limit its application to a first criminal prosecution nor to state court prosecutions only. It clearly states a single standard by which to judge whether tolling is triggered by a criminal prosecution. The statute has already been found unambiguous by at least one Virginia court. See McEvily v. K-Mart Corp., 73 Va. Cir. 51 (Va. Cir. Ct. 2007). To borrow language from the McEvily opinion, "[a] plain reading of the statute does not support [Defendants'] limited interpretation[s]." Section 8.01-229(K) is not ambiguous, and therefore the Burns admonition does not apply.

The language in Section 8.01-229(K) encompasses the facts of the present case. Thus, Plaintiff's claims are not barred by the statute of limitations because the limitations period was tolled by that provision during Plaintiff's state and federal prosecutions.

### V. COUNT VI: MALICIOUS PROSECUTION (BOTH DEFENDANTS)

Pointing to Lambert v. Williams, 223 F.3d 257 (4th Cir. 2000), Defendants next argue

that claims of malicious prosecution under Section 1983 are no longer considered distinct from Fourth Amendment unreasonable seizure claims, and therefore that Count VI must be dismissed as duplicative.

The plaintiffs in Lambert brought a Section 1983 action against county officials regarding abuse and neglect proceedings brought against them as parents. Most of their claims for relief had previously been found barred by res judicata, including claims based on Fourteenth Amendment violations. In evaluating their sole remaining claim for malicious prosecution under Section 1983, the Fourth Circuit stated "[w]hat is conventionally referred to as a '§ 1983 malicious prosecution' action is nothing more than a § 1983 claim arising from a Fourth Amendment violation." Lambert, 223 F.3d at 260. The Lambert Court went on to explain that "there is no such thing as a '§ 1983 malicious prosecution' claim. What we termed a 'malicious prosecution' claim in [Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996)] is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceedings terminate favorably to the plaintiff." Lambert, 223 F.3d at 262. That the Lamberts had alleged Fourteenth Amendment violations was insufficient; even if those claims had not been barred by res judicata, they still would not have supported the malicious prosecution claim, which can only be based on Fourth Amendment seizure. Id. at 261 (citing Albright v. Oliver, 510 U.S. 266 (1994)). The Lamberts had not alleged any Fourth Amendment violation, so the Fourth Circuit dismissed the malicious prosecution count for failure to state a claim. Id. at 263.

Lambert stands for the proposition that a malicious prosecution claim must be founded upon an alleged Fourth Amendment violation. As the Fourth Circuit explained after Lambert,

"[i]n order for a plaintiff to state a section 1983 malicious prosecution claim for a seizure violative of the Fourth Amendment, we have required that the <u>defendant</u> have 'seized [plaintiff] pursuant to legal process that was not supported by probable cause and that the criminal proceedings [have] terminated in [plaintiff's] favor.'" Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005) (quoting Brooks, 85 F.3d at 183–84) (emphasis and alterations in original). Other lower courts have also cited Lambert to establish that a Fourth Amendment violation must be alleged to adequately state a Section 1983 claim for malicious prosecution. See, e.g., Jackson v. Alleghany County, 2008 WL 3992351 (W.D. Va. Aug. 28, 2008) (allowing plaintiff to amend her complaint to state a claim for malicious prosecution based on a Fourth Amendment violation); McKee v. Tucker, 2007 WL 1174179 (D.S.C. Apr. 18, 2007) (granting summary judgment against plaintiff on malicious prosecution claim because there was probable cause for his arrest); Curtis v. Devlin, 2005 WL 940571 (E.D. Va. Apr. 19, 2005) (explaining that § 1983 actions for false arrest, false imprisonment, and malicious prosecution should all be analyzed as unreasonable seizures under the Fourth Amendment).

In the instant matter, Plaintiff has alleged each of the common law elements of malicious prosecution in addition to violations of both his Fourth and Fourteenth Amendment rights. As explained previously, only a Fourth Amendment violation can support a malicious prosecution claim; thus, the alleged violations of Plaintiff's Fourteenth Amendment rights are inapposite. Also inapposite are Plaintiff's allegations of Defendants' malice. See Burrell, 395 F.3d at 514 n.5 ("Although malice is required to state a claim for malicious prosecution at common law, the reasonableness of a seizure under the Fourth Amendment should be analyzed objectively." (citing Brooks, 85 F.3d at 184 n.5)). Nevertheless, Plaintiff's claim still includes the necessary

13

allegations that he was seized without probable cause and that he obtained a favorable termination of the proceedings against him. See id. at 514.

Although Counts I–IV similarly depend on Plaintiff's alleged Fourth Amendment deprivation, the claim in Count VI is distinct in at least two ways from the claims in those counts. First, Count VI contains an allegation that is necessary to obtain relief in the malicious prosecution context specifically, i.e. the favorable termination of proceedings against him. Second, this claim accrued on a different date from Plaintiff's other claims for relief under Section 1983. Brooks, 85 F.3d at 183 ("Because § 1983 actions seeking damages for unconstitutional arrest or confinement imposed pursuant to legal process—claims most analogous to the common-law tort of malicious prosecution—must allege and prove a termination of the criminal proceedings favorable to the accused, such claims do not accrue until a favorable termination is obtained." (citing Heck v. Humphrey, 512 U.S. 477 (1994))). In light of these differences and the continued cognizance of appropriately stated malicious prosecution claims within the Fourth Circuit, dismissal of this claim as duplicative is not warranted.

## VI. PROXIMATE CAUSE (DEFENDANT WHITSON)

Defendant Whitson argues that Counts II (False Arrest) and VI (Malicious Prosecution) should be dismissed against him because he was not the proximate cause of the violations alleged in those Counts. Generally, questions of proximate cause are not decided on a motion to dismiss. Schieszler v. Ferrum College, 236 F. Supp. 2d 602, 611–12 (W.D. Va. 2002). Nevertheless, as explained in the following analysis, Whitson's proximate cause argument is insufficient to justify dismissal.

As to Count II, Whitson argues that he "acted in good faith and obeyed the instructions of his supervisors with respect to the search warrant and subsequent arrest," and therefore was not "a proximate cause of any of the alleged claims." Doc. 32 at 15. Plaintiff responds that Count II is based not on those events, but rather on the initial handcuffing of Plaintiff by Defendants and their subsequent protective sweep of Plaintiff's residence—both of which occurred before the search warrant was obtained and executed. In reply, Whitson cites authority for the proposition that where there is a conflict between the bare allegations of a complaint and an attached exhibit, the exhibit prevails. Doc. 32 at 14 (citing U.S. ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593 (E.D. Va. 2004)). Because Plaintiff attached an affidavit prepared by Whitson during Plaintiff's prosecution, and because that affidavit indicates that Whitson did not place handcuffs on the defendant and conducted only a brief protective sweep, Whitson argues that the Complaint's allegations fail and therefore Plaintiff has failed to state a claim.

While Whitson correctly states the law regarding conflicts between complaints and attached exhibits, he errs in applying it to the case at hand. In Jones v. Cincinnati, 521 F.3d 555 (6th Cir. 2008), the Sixth Circuit explained:

> Where a plaintiff attaches to the complaint a document containing unilateral statements made by a defendant, where a conflict exists between those statements and the plaintiff's allegations in the complaint, and where the attached document does not itself form the bases for the allegations, [Federal Rule of Civil Procedure] 10(c) 'does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact.' See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 454–56 (7th Cir. 1998). Rather, we treat the exhibit as an allegation that the officers made the statements in the [exhibits] and we treat that allegation as true.

Jones, 521 F.3d at 561. While no Fourth Circuit cases have considered this particular issue, the

reasoning is sound; Plaintiff did not attach Defendant Whitson's affidavit to prove the facts in the affidavit, but rather to support the allegations in his Complaint. See Doc. 1 ¶ 98. Plaintiff even goes so far as to allege within the Complaint that the contents of the affidavit are not to be trusted. Id. To take Whitson's "untested, self-serving assertions" as true and use them to dismiss Plaintiff's claim, as Whitson urges, would make little sense. See South Bend, 163 F.3d at 456.

Despite Whitson's arguments that he did not proximately cause the harm alleged in Plaintiff's malicious prosecution claim, Plaintiff has alleged that he did. Specifically, Plaintiff alleges that both Whitson and Knorowski "set on foot" and "instituted" Plaintiff's prosecution "because they were the officers who conducted the initial illegal search of Plaintiff's residence despite being instructed by Sergeant Walker not to conduct a search there." Doc. 1 ¶¶ 93, 95. Plaintiff further alleges that "the illegal search resulted in Plaintiff's wrongful incarceration." Id. ¶ 99. Finally, Plaintiff alleges that "[a]s a direct and proximate result of the actions and omissions of Defendants [Knorowski and Whitson], who . . . deprived Plaintiff of his Federally-recognized and protected rights against unreasonable and illegal search and seizure under the Fourth Amendment . . . Plaintiff suffered deprivation of liberty and wrongful incarceration . . . ." Id. ¶ 102. While Plaintiff has yet to prove these allegations, they are sufficient to survive a motion to dismiss for lack of proximate cause.

## VII. OFFICIAL CAPACITY (DEFENDANT KNOROWSKI)

Knorowski briefly sets forth an argument that Plaintiff's claims against him in his official capacity should be dismissed, both because they are duplicative, see Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004), and because Knorowski is not a municipal official with final

policy-making authority, see Pembauer v. City of Cincinnati, 475 U.S. 469 (1986). However, as Plaintiff points out, Love-Lane stands for the proposition that official capacity claims against an individual are duplicative when both the individual and the individual's employer are named defendants. See Love-Lane, 355 F.3d at 783 (explaining that where a school board and the school board superintendent were named defendants, the claim against the superintendent in his official capacity should be dismissed as duplicative). Plaintiff also notes that Pembauer does not require an individual to have policy-making authority to be sued in an official capacity, but only requires that a plaintiff's harm be caused by action taken pursuant to an official municipal policy. See Pembauer, 475 U.S. at 471.

Knorowski offers no rebuttal to Plaintiff's accurate analysis. As Plaintiff has not named Knorowski's employer as a defendant, Plaintiff's claims against Knorowski in his official capacity are not duplicative. Also, Plaintiff has alleged that Defendants were acting pursuant to established custom approved by Portsmouth policymakers, see, e.g., Doc. 1 ¶ 44, which is sufficient to overcome Defendant's Pembauer argument. Therefore, Plaintiff's official capacity claims against Knorowski will not be dismissed.

## VIII. CONCLUSION

For the reasons set forth above, Defendant Knorowski's and Defendant Whitson's respective Motions to Dismiss are **DENIED**.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of Record.

It is so **ORDERED**.

/s/
_____
Henry Coke Morgan, Jr.
Senior United States District Judge

_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: October 6, 2009